TIMOTHY A. CANNING  CSB No. 148336
Law Offices of Timothy A. Canning
1125 16th St., Suite 204
PO Box 4201
Arcata, CA 95518

Telephone:  (707) 822-1620
Facsimile: (707) 760-3523
Email: tc@tclaws.com

Attorney for Plaintiff RICHARD SACKS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD SACKS, individually and doing business as INVESTORS RECOVERY SERVICE, | Case No.  C 10-01330 SI |
| Plaintiff, | |
| vs | PLAINTIFF'S STATEMENT IN OPPOSITION TO DEFENDANTS' NOTICE OF RELATED CASE; DECLARATION OF TIMOTHY A CANNING |
| DEAN DIETRICH, TERI COSTER BOESCH and DOES 1 through  50, inclusive | |
| Defendants. | |

Pursuant to Local Rule 3-13, plaintiff Richard Sacks submits the following statement in opposition to defendants' Notice of Related Case.  Defendants' Notice of Related Case was filed and served in this matter on March 30, 2010.[1]  Defendants claim that this removed action is related to a petition that has been pending with the Ninth Circuit Court of Appeals since November, 2007.   The two actions are not related.

---

[1] Defendants state that their Notice was filed pursuant to Local Rule 3-12;  however, as they did not file an Administrative Motion as required by that rule, defendants were likely  referring to Local Rule 3-13.

**DESCRIPTION OF THE ACTIONS**

Plaintiff Richard Sacks is a non-attorney advocate who has been representing parties in contractual arbitration for nearly 20 years. Under California law, a party to a contractual arbitration can be represented by someone who is not an attorney. Cal. Code of Civil Procedure § 1281.4(i)(3).

One of the organizations that administer contractual arbitration proceedings is FINRA (formerly known as the National Association of Securities Dealers, Inc., or NASD). Much like the AAA or JAMS, FINRA has adopted a set of rules under which its contractual arbitrations are administered. Also like AAA or JAMS, FINRA does not employ arbitrators but has developed a pool of arbitrators from which individual arbitrators are selected or appointed to hear and decide a particular dispute.

Approximately three years ago, FINRA adopted a rule which purported to ban non-attorney advocates from representing parties in contractual arbitrations at FINRA, where those non-attorneys had been barred from the securities industry by the SEC or other securities regulator (the "representation rule"). Richard Sacks, plaintiff in this action, had been barred from the securities industry in 1991.

FINRA's new representation rule was subject to approval by the SEC, because of FINRA's unique status as a securities market regulator (even though the regulatory function is not involved in FINRA's administration of contractual arbitrations).

After the SEC approved FINRA's representation rule, Mr. Sacks challenged the SEC's approval by filing a petition in the U.S. Court of Appeals for the Ninth Circuit. That petition was filed in November, 2007, with the following case name and number: <u>Richard L. Sacks v Securities Exchange Commission</u>, U.S. Court of Appeals for the Ninth Circuit case no. 07-74647 (referred to herein as the "Ninth Circuit petition"). (An endorsed-filed copy of the petition is attached hereto as Exhibit A.)

Mr. Sacks challenged the SEC's approval of the representation rule primarily on the grounds that the approval was contrary to the requirements of 15 U.S.C.

section 78y(b)(4).  Original jurisdiction of the petition was vested in the U.S. Court of Appeals pursuant to 15 U.S.C. section 78y(b).  The only respondent in the Ninth Circuit petition is the SEC.   That matter has been fully briefed, and is waiting to be assigned a date for oral argument.

The present matter, however, arises from an entirely different set of facts.

Here, as alleged in the complaint,  Mr. Sacks had been hired by an aggrieved employee of a FINRA member firm, to represent that former employee in a contractual arbitration proceeding against his former employer, which was to be administered by FINRA.  The two defendants in this action were selected as arbitrators. (A copy of the complaint is attached hereto as Exhibit B.)

In February, 2010,  the two arbitrators/defendants entered an order in the contractual arbitration proceeding, purporting to bar Mr. Sacks from representing his client.  Plaintiff  alleges that the representation rule  leaves decisions about who can represent parties in arbitration to the courts or other regulatory agencies.

Subsequently, Mr. Sacks filed this suit against those two arbitrators in California Superior Court, asserting state law claims of tortuous interference with contractual relationship and interference with prospective economic advantage.   Mr. Sacks claims that the arbitrators exceeded their contractual authority by barring him from representing his client, and as a result wrongfully interfered with his contract with his client, to his detriment.  Defendants then removed this action to this court.

**RELATIONSHIP OF THE TWO ACTIONS**

These two actions do not involve all or a material part of the same subject matter,  and do not involve all or substantially all of the same parties, contrary to the requirements of Local Rule 3-13.   Instead, the relationship between these two actions is tenuous, at best.

**Parties**:   Though plaintiff here and petitioner in the Ninth Circuit petition are one and the same, no other party in this action is involved in the Ninth Circuit petition. Here, two private individuals – neither of whom were employed by FINRA or

1    by the SEC – are being sued for tortuous interference with contract, under state law.

2        **Relief Requested**:   The two actions request very dissimilar relief.  In the

3    Ninth Circuit petition, Mr. Sacks requests that the court invalidate the SEC's approval of

4    the  FINRA representation rule. Here, Mr. Sacks seeks monetary damages under

5    California tort law from two private individuals  on the grounds that those individuals

6    exceeded their contractual authority as arbitrators when they barred Mr. Sacks from

7    representing his client in arbitration.

8        **Legal Theories**:    In the Ninth Circuit petition, Mr. Sacks seeks to

9    invalidate the SEC's approval of the representation rule, pursuant to the Securities

10   Exchange Act.  That involves only issues of federal law.

11       Here, however,  Mr. Sacks seeks damages from the individual arbitrators

12   pursuant to state law tort theories, on the grounds that the arbitrators exceeded their

13   contractual authority and by doing so  interfered with Mr. Sacks' contract with his client.

14    Arbitrators' authority is derived from the arbitration agreement;  and arbitration

15   agreements are interpreted in accordance with state law.   *Comedy Club, Inc. v Improv*

16   *West Associates* (9th Cir. 2009) 553 F.3d 1277, 1288.

17       **Federal Subject Matter Jurisdiction**:  In Mr. Sacks' Ninth Circuit

18   petition, subject matter jurisdiction is conferred on the federal courts by an express

19   statutory provision (15 U.S.C. 78y(b)).

20       In contrast, here there is no federal statute that confers subject matter

21   jurisdiction in the federal courts.   Indeed, subject matter jurisdiction is entirely lacking.

22   First, the requirements for diversity jurisdiction cannot be met, as all parties are

23   domiciled in California.

24       Further, there is no substantial federal question involved.    This matter

25   involves the application of California state law on tortuous liability for interference with

26   contract and interference with  prospective economic relations. Those claims do not

27   involve a significant question of federal law. *See Petrie v Pacific Stock Exchange* (N.D.

28   Cal. 1997)  982 F.Supp. 1390;  *cf Sparta Surgical Corp. v National Ass'n of Securities*

4

1  *Dealers, Inc.* (9th Cir. 1998) 159 F.3d 1209.   In *Petrie*,  the court remanded an action for
2  breach of contract against the Exchange, finding there was no federal question
3  jurisdiction over what was a claim arising under state law.

4         In contrast, in *Sparta*, 159 F.3d 1209, the court there held that a substantial
5  federal question was presented, but on facts significantly different from those here.  Here,
6  neither FINRA nor any employee of FINRA is a named defendant (unlike *Sparta*);  there
7  is no violation of the Securities Exchange Act involved in this action (also unlike
8  *Sparta*);  Mr. Sacks does not claim that FINRA or a FINRA employee breached its rules
9  (as Sparta alleged in its case); and here any right to relief that plaintiff may have is not
10  "predicated on subject matter committed exclusively to federal court" -- in fact, quite the
11  opposite, as a host of federal opinions involving arbitration reflect.  *See generally*,  *Hall*
12  *Street Associates v Mattel* (2008)  552 U.S. 576, 128 S.Ct. 1396 (Federal Arbitration Act
13  does not confer subject matter jurisdiction over action involving arbitration);  and *Garrett*
14  *v Merrill Lynch, Pierce, Fenner & Smith* (9th Cir. 1993)  7 F.3d 882 (allegations of a
15  violation of Securities Exchange Act's prohibition on churning was insufficient to create
16  federal question jurisdiction over petition to vacate an arbitration award).

17                              **CONCLUSION**

18         For the foregoing reasons, plaintiff  opposes defendants' Notice of Related
19  Case.  Plaintiff requests that the two actions not be deemed related.

20                              Respectfully Submitted,
21                              LAW OFFICES OF TIMOTHY A. CANNING

22

23  Dated:  April 13, 2010          By:_____/S/_____.

24                                 Timothy A. Canning
25                                 Attorney for Plaintiff Richard Sacks

5

## DECLARATION OF TIMOTHY A CANNING

I, Timothy A. Canning, declare:

    1)    I am the attorney for plaintiff  Richard Sacks in this action.  I also represent Richard Sacks in the petition filed with the Ninth Circuit Court of Appeals,  known as Richard L. Sacks v Securities Exchange Commission,  U.S. Court of Appeals for the Ninth Circuit case no. 07-74647.   I have personal knowledge of the facts as stated herein, and if called as a witness in this matter, I could and would testify competently thereto.

    2)    Atttached hereto as Exhibit A is a true and correct copy of the petition filed with the Ninth Circuit.

    3)    Attached hereto as Exhibit B is a true and correct copy of the complaint filed in this action.

I declare under the penalty of perjury that the foregoing is true and correct, and this declaration was executed on April 13, 2010, at Arcata, California.


_____/s/_____

Timothy A. Canning



FILED

NOV 13 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

RECEIVED DEC - 3 2007

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RICHARD L. SACKS,
               Petitioner,

v.

SECURITIES AND EXCHANGE
COMMISSION,
               Respondent.

No.  07 - 74647

PETITION FOR REVIEW

BY FAX

          Pursuant to section 78y of Title 15 of the United States Code, petitioner

Richard L. Sacks hereby petitions the Court for review of Securities and Exchange

Commission ("SEC") release number 34-56540, file number SR-NASD-2006-109

filed on October 2, 2007 and published at 72 Fed. Reg. 56410 on October 3, 2007,

which approved a proposed rule published in release number 34-55604, file number SR-

NASD-2006-109, published at 72 Fed. Reg. 18703 on April 13, 2007. True and correct

copies of the above-referenced releases are attached hereto and incorporated herein by

this reference.

          The foregoing releases and rules were promulgated pursuant to section 78s

of Title 15 of the United States Code. Petitioner is a person aggrieved by and adversely

affected by the above-described order and rulemaking of the SEC, and requests that the

portions of those rule which state, "Parties may be represented in arbitration [mediation]

by a person who is not an attorney unless ….. the person is currently suspended or barred

Page 1

*Ex A, p. 1 of 10*

from the securities industry in any capacity", be modified or set aside.  Petitioner resides in and has his principal place of business within this Circuit.

Respectfully submitted,

Dated:  November 13, 2007

Timothy A. Canning CSB 148336
Law Offices of Timothy A. Canning
1125 16th St., Suite 204
PO Box 4201
Arcata, CA 95518
(707) 822-1620  (voice)
(707) 760-3523 (fax)
tc@tclaws.com

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2007,  I served a true copy of the above document and attached exhibit by first-class mail,  postage prepaid, upon the Securities and Exchange Commission, said envelope addressed as follows:

Brian Cartwright
General Counsel
Securities and Exchange Commission
100 F. St. N.E.
Washington, D.C. 20549

Dated: November 13, 2007

Timothy A. Canning

the Commission of any written comments received by DTC.

## III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action

The foregoing rule change has become effective upon filing pursuant to Section 19(b)(3)(A)(iii) of the Act[6] and Rule 19b–4(f)(4)[7] thereunder because the proposed rule effects a change in an existing service of DTC that (i) does not adversely affect the safeguarding of securities or funds in the custody or control of DTC or for which it is responsible and (ii) does not significantly affect the respective rights or obligations of DTC or persons using the service. At any time within 60 days of the filing of the proposed rule change, the Commission could have summarily abrogated such rule change if it appeared to the Commission that such action was necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act.

## IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

*Electronic Comments*

• Use the Commission's Internet comment form (*http://www.sec.gov/ rules/sro.shtml*) or
• Send an e-mail to *rule- comments@sec.gov.* Please include File Number SR–DTC–2007–09 on the subject line.

*Paper Comments*

• Send paper comments in triplicate to Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE., Washington, DC 20549–1090.
All submissions should refer to File Number SR–DTC–2007–09. This file number should be included on the subject line if e-mail is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's Internet Web site (*http://www.sec.gov/ rules/sro.shtml*) Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the

Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for inspection and copying in the Commission's Public Reference Section, 100 F Street, NE., Washington, DC 20549, on official business days from 10 a.m. to 3 p.m. The text of the proposed rule change is available at DTC, the Commission's Public Reference Room, and *http:// www.dtcc.com/downloads/legal/ rule_filings/2007/dtc/2007-09.pdf.* All comments received will be posted without change; the Commission does not edit personal identifying information from submissions. You should submit only information that you wish to make available publicly. All submissions should refer to File Number SR–DTC–2007–09 and should be submitted on or before October 24, 2007.

For the Commission by the Division of Market Regulation, pursuant to delegated authority.[8]

**Florence E. Harmon,**
*Deputy Secretary.*
[FR Doc. E7–19534 Filed 10–2–07; 8:45 am]
**BILLING CODE 8011–01–P**

## SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–56540; File No. SR–NASD– 2006–109]

Self-Regulatory Organizations; National Association of Securities Dealers, Inc. (n/k/a Financial Industry Regulatory Authority, Inc.); Order Approving Proposed Rule Change as Modified by Amendment Nos. 1 and 2 Thereto Relating to Representation of Parties in Arbitration and Mediation

September 26, 2007.

## I. Introduction

On September 14, 2006, the National Association of Securities Dealers, Inc. ("NASD") (n/k/a Financial Industry Regulatory Authority, Inc. ("FINRA")), through its wholly owned subsidiary, NASD Dispute Resolution, Inc. ("NASD Dispute Resolution, (n/k/a, FINRA Dispute Resolution, Inc.), filed with the Securities and Exchange Commission ("SEC" or "Commission"), pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act")[1] and Rule

19b–4 thereunder,[2] a proposed rule change relating to representation of parties in arbitration and mediation.[3] On November 9, 2006 and February 23, 2007, NASD Dispute Resolution submitted Amendment Nos. 1 and 2, respectively, to the proposed rule change. The proposed rule change, as amended, was published for comment in the **Federal Register** on April 13, 2007.[4] The Commission received five comments on the proposal.[5] For the reasons discussed below, the Commission is approving the proposed rule change, as amended.

## II. Description of the Proposal

The changes to NASD's Code of Arbitration Procedure for Customer Disputes, Code of Arbitration Procedure for Industry Disputes, and Code of Mediation Procedure provide that in both arbitration and mediation: (1) Parties may represent themselves; (2) parties may be represented by an attorney, provided certain criteria are met; (3) parties may be represented by a person who is not an attorney, unless state law prohibits such representation or the person is currently suspended or barred from the securities industry in any capacity or is currently suspended from the practice of law or disbarred; and (4) issues regarding qualifications of a representative are governed by applicable law.

First, the proposed rule change codifies current practice by explicitly stating that parties may represent themselves in arbitration.

Second, the proposed rule change codifies current practice permitting the multi-jurisdictional practice of law by attorneys in the NASD Dispute Resolution forum to the extent permitted by state law. In addition, the proposed rule change states that if a party chooses to be represented by an attorney, the attorney must be licensed to practice in a U.S. jurisdiction and be

---

[6] 15 U.S.C. 78s(b)(3)(A)(iii).
[7] 17 CFR 240.19b–4(f)(4).

[8] 17 CFR 200.30–3(a)(12).
[1] 15 U.S.C. 78s(b)(1).

[2] 17 CFR 240.19b–4.
[3] On July 26, 2007, the Commission approved a proposed rule change filed by NASD to amend NASD's Certificate of Incorporation to reflect its name change to Financial Industry Regulatory Authority Inc., or FINRA, in connection with the consolidation of the member firm regulatory functions of NASD and NYSE Regulation, Inc. *See* Exchange Act Release No. 56146 (July 26, 2007); 72 FR 42190 (Aug. 1, 2007).
[4] *See* Securities Exchange Act Release No. 55604 (April 9, 2007), 72 FR 18703 (April 13, 2007).
[5] *See* letters to Nancy Morris, Secretary, Commission, from Timothy Canning, Law Offices of Timothy A. Canning, dated May 4, 2007 ("*Canning*"); Vincent DiCarlo, Law Offices of Vincent DiCarlo, dated May 4, 2007 ("*DiCarlo*"); Jill I. Gross, Director of Advocacy, Pace Investor Rights Project, dated May 4, 2007 ("*Pace*"); Richard L. Sacks, dated May 3, 2007 ("*Sacks*"); and Irwin G. Stein, dated May 4, 2007 ("*Stein*").

***Ex. A, p. 1 of 8***

***Ex A, p. 3 of 10***

in good standing in that jurisdiction.[6] NASD stated that requiring an attorney to be licensed and in good standing in a U.S. jurisdiction will protect investors by prohibiting individuals who have been suspended from the practice of law or disbarred from representing parties in the NASD forum. Further, NASD stated that the requirement for an attorney to be licensed to practice in a U.S. jurisdiction sets a standard of practice for its forum that is consistent with the other rules and proceedings of NASD.

Third, the proposed rule change addresses the representation of parties by non-attorneys in the NASD forum. Under the proposed rule change, parties may be represented in an arbitration or mediation by a person who is not an attorney, unless applicable law prohibits such representation or the person is currently suspended or barred from the securities industry in any capacity or is currently suspended from the practice of law or disbarred.

While this provision would be applicable to all arbitration claims, it may be particularly beneficial for certain investors that may have difficulty retaining an attorney on a contingency-fee basis. For example, investors with small claims may be unable to retain an attorney because the attorney may believe that the attorney's share of any award would be too small to justify the effort. In these circumstances, investors may benefit from being able to seek other assistance to resolve their arbitration or mediation claims for a more affordable fee.[7] At the same time, NASD stated that such non-attorney representatives should not be persons who have been found by a regulatory body in essence to be unfit to represent clients or to conduct securities business with the public. Thus, to protect investors, the rule would

prohibit non-attorney representatives who are currently suspended or barred from the securities industry, or are currently suspended from the practice of law or disbarred, from representing parties in the NASD Dispute Resolution forum.

Last, the proposed rule change would allow an attorney to represent a client in an NASD arbitration or mediation held in any U.S. hearing location, regardless of the jurisdiction in which the attorney is licensed. An attorney's ability to represent clients in a jurisdiction in which he or she is not licensed, however, would be subject to the applicable law of that jurisdiction. The proposed rule change is not intended to preempt state law; it is intended to reflect current practice in the forum which, based on experience, indicates that the outcome of a dispute resolution proceeding depends more on the level of knowledge, training and skill of the attorneys, rather than the jurisdiction from which the attorneys received their license to practice.

## III. Comment Summary and Response to Comments

The Commission received five comments[8] on the proposal and a response to comments.[9] One commenter generally expressed support for the proposed rule change.[10] The remaining four commenters opposed the proposed rule change and the NASD Response addressed these comments.[11]

Three commenters expressed the view that there should be a uniform national rule governing who can represent a party in a NASD forum, rather than permitting the incorporation of state rules that may vary from jurisdiction to jurisdiction.[12] These commenters suggested that NASD should adopt a uniform rule that would preempt contrary state laws.[13] NASD indicated that it had determined that "there is no overriding need for a uniform rule in this area, and that the continued compliance with state rules is in the best interests of all participants in its arbitration forum."[14] NASD also noted that this position is consistent with its previous position with respect to

arbitrator disclosure, distinguishing attorney qualification rules and rules regulating arbitration procedure.[15]

Four commenters stated that the proposed rule change would penalize retroactively those persons who are currently suspended or barred from the securities industry by prohibiting them from representing a party in an arbitration or mediation proceeding.[16] In their view, it would impose a new penalty on those who have had their misconduct adjudicated and sanctions imposed.[17] NASD indicated that the rule is "designed to protect investors" and that at a minimum a non-attorney representative should not be "a person whom a regulatory body has suspended or barred from representing clients or conducting securities business with the public."[18]

In addition, in response to comments that the proposed rule may unduly limit investor choices,[19] NASD stated that it believes that the limitations on the choice of representation under the proposed rule are appropriate and would protect investors.[20]

## IV. Discussion and Findings

The Commission believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the Act,[21] which requires, among other things, that NASD's rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest. The Commission believes that the proposed rule change meets this standard by balancing the needs of investors to have access to representation, particularly in small cases, with NASD's responsibility to protect investors, the integrity of its forum, and the public interest.

## V. Conclusion

*It is therefore ordered*, pursuant to Section 19(b)(2) of the Act,[22] that the proposed rule change (SR–NASD–2006–109), as amended, be, and hereby is, approved.

---

[6] The requirement to be licensed to practice in a U.S. jurisdiction and be in good standing in that jurisdiction is in addition to and not in lieu of the requirement that an attorney must comply with applicable laws of the relevant jurisdiction. While the multi-jurisdictional practice of law may be permitted in many jurisdictions, it may constitute a violation of certain states' unauthorized practice of law provisions.

[7] Consistent with current practice, the proposed rule would allow a relative, friend or associate to represent or assist a person (*e.g.*, an elderly or disabled person) with his or her arbitration or mediation. In addition, law school securities arbitration clinics can provide investors with affordable legal representation. A securities arbitration clinic also can help an investor who has a smaller claim but is unable to hire an attorney, provided the investor qualifies for assistance. See *How to Find an Attorney* (for more information on clinic locations and eligibility requirements), available at: *http://www.finra.org/ArbitrationMediation/StartanArbitrationorMediation/HowtoFindanAttorney/index.htm.*

[8] Canning, DiCarlo, Pace, Sacks, and Stein.

[9] See letter to Nancy Morris, Secretary, Commission, from Mignon McLemore, Assistant Chief Counsel, FINRA Dispute Resolution, dated September 17, 2007 ("NASD Response"). While FINRA had been formed at the time of the submission of the NASD Response, for ease of reference the term NASD is used throughout.

[10] Pace.

[11] Canning, DiCarlo, Sacks, and Stein. *See also* NASD Response.

[12] Canning, DiCarlo, and Stein.

[13] *Id.*

[14] NASD Response.

[15] *Id.*

[16] Canning, DiCarlo, Sacks, and Stein.

[17] *Id.*

[18] NASD Response. NASD noted that "[t]he proposal will apply prospectively as to representation on or after the effective date. If a barred or suspended individual is representing a party in a case pending on the effective date of the rule, he or she may continue to serve on that case, but may not serve on new ones."

[19] Canning, DiCarlo, Sacks, and Stein.

[20] *Id.*

[21] 15 U.S.C. 78o–3(b)(6).

[22] 15 U.S.C. 78s(b)(2).

*Ex. A, p. 2 of 8*

*Ex. A, p. 4 of 10*

For the Commission, by the Division of Market Regulation, pursuant to delegated authority.[23]

**Florence E. Harmon,**
*Deputy Secretary.*
[FR Doc. E7–19536 Filed 10–2–07; 8:45 am]
BILLING CODE 8011–01–P

## SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–56564; File No. SR–ISE–2007–74]

**Self-Regulatory Organizations; International Securities Exchange, LLC; Order Granting Accelerated Approval to a Proposed Rule Change, as Modified by Amendment No. 1, Relating to an Extension and Expansion of the Penny Pilot Program**

September 27, 2007.

### I. Introduction

On August 21, 2007, the International Securities Exchange, LLC ("ISE" or "Exchange") filed with the Securities and Exchange Commission ("Commission"), pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act"),[1] and Rule 19b–4 thereunder,[2] a proposed rule change to extend and expand a pilot program to quote certain options in smaller increments ("Pilot Program" or "Pilot"). On August 22, 2007, the Exchange filed Amendment No. 1 to the proposed rule change. The proposed rule change, as amended, was published for comment in the Federal Register on August 29, 2007.[3] The Commission received one comment letter on the proposed rule change.[4] This order approves the proposed rule change, as modified by Amendment No. 1, on an accelerated basis.

### II. Description of the Proposal

Currently, the six options exchanges, including ISE, participate in the thirteen class Pilot Program,[5] which is

scheduled to expire on September 27, 2007.[6] The Exchange proposes to extend and expand the Pilot Program to include fifty additional classes, in two phases.

Phase One will begin on September 28, 2007 and will continue for six months, until March 27, 2008. Phase One will add the following twenty-two options classes to the Pilot: SPDRs (SPY); Apple, Inc. (AAPL); Altria Group Inc. (MO); Dendreon Corp. (DNDN); Amgen Inc. (AMGN); Yahoo! Inc. (YHOO); QUALCOMM Inc. (QCOM); General Motors Corporation (GM); Energy Select Sector (XLE); DIAMONDS Trust, Series 1 (DIA); Oil Services HOLDRs (OIH); NYSE Euronext, Inc. (NYX); Cisco Systems, Inc. (CSCO); Financial Select Sector SPDR (XLF); AT&T Inc. (T); Citigroup Inc. (C); Amazon.com Inc. (AMZN); Motorola Inc. (MOT); Research in Motion Ltd. (RIMM); Freeport-McMoRan Copper & Gold Inc. (FCX); ConocoPhillips (COP); and Bristol-Myers Squibb Co. (BMY). These twenty-two options classes are among the most actively-traded, multiply-listed options classes, and account, together with the current thirteen Pilot classes, for approximately 35% of total industry trading volume.[7]

Phase Two will begin on March 28, 2008, and will continue for one year, until March 27, 2009. During the second phase, the number of options classes trading in pennies will again increase.[8] The Exchange proposes to add twenty-eight more classes from among the most actively-traded, multiply-listed options classes.[9]

The minimum price variation for all classes to be included in the Pilot Program, except for the QQQQs, will continue to be $0.01 for all quotations in option series that are quoted at less than $3 per contract and $0.05 for all quotations in option series that are quoted at $3 per contract or greater. The QQQQs will continue to be quoted in $0.01 increments for all options series.

During the extended and expanded Pilot Program, the ISE commits to

deliver four reports to the Commission. Each report will analyze the impact of penny pricing on market quality and options system capacity. The first report will analyze the penny pilot results from May 1, 2007 through September 27, 2007; the second will analyze the results from September 28, 2007 through January 31, 2008; the third will analyze the results from February 1, 2008 through July 31, 2008; and the fourth and final report will examine the results from August 1, 2008 through January 31, 2009. These reports will be provided to the Commission within thirty days of the conclusion of the reporting period.

### III. Discussion

After careful review of the proposal and the comment letter, the Commission finds that the proposed rule change is consistent with the requirements of the Act and the rules and regulations thereunder applicable to a national securities exchange.[10] In particular, the Commission finds that the proposal is consistent with section 6(b)(5) of the Act,[11] which requires, among other things, that the rules of an exchange be designed to promote just and equitable principles of trade, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest.

On June 28, 2005, the Pacific Exchange (now known as NYSE Arca) announced its intention to begin quoting and trading all listed options in penny increments.[12] In June 2006, to facilitate the orderly transition to quoting a limited number of options in penny increments, Chairman Cox sent a letter to the six options exchanges urging the exchanges that chose to begin quoting in smaller increments to plan for the implementation of a limited penny pilot program to commence in January 2007.[13] All six of the options exchanges submitted proposals to permit quoting a limited number of classes in smaller increments, and, in January 2007, the Commission approved those proposals to implement the current Pilot Program.[14] The exchanges

---

[23] 17 CFR 200.30–3(a)(12).

[1] 15 U.S.C. 78s(b)(1).

[2] 17 CFR 240.19b–4.

[3] *See* Securities Exchange Act Release No. 56306 (August 22, 2007), 72 FR 49753.

[4] *See* letter to Nancy Morris, Secretary, Commission, from John C. Nagel, Director & Associate General Counsel, Citadel, dated September 12, 2007 ("Citadel Letter").

[5] The thirteen option classes currently in the Pilot are: Ishares Russell 2000 Index Tracking Stock (IWM); NASDAQ–100 Index Tracking Stock (QQQQ); SemiConductor Holders Trust (SMH); General Electric Company (GE); Advanced Micro Devices, Inc. (AMD), Microsoft Corporation (MSFT); Intel Corporation (INTC); Caterpillar, Inc. (CAT); Whole Foods Market, Inc. (WFMI); Texas Instruments, Inc. (TXN); Flextronics International Ltd. (FLEX); Sun Microsystems, Inc. (JAVA); and Agilent Technologies, Inc. (A).

[6] The Pilot Program began on January 26, 2007 and is currently set to expire on September 27, 2007. *See* Securities Exchange Act Release No. 56151 (July 26, 2007), 72 FR 42452 (August 2, 2007) (SR-ISE–2007–68). *See also* Securities Exchange Act Release No. 55161 (January 24, 2007), 72 FR 4754 (February 1, 2007) (SR–ISE–2006–62) ("Original Pilot Program Approval Order").

[7] This volume is based on the Options Clearing Corporation ("OCC") year-to-date trading volume data through July 16, 2007.

[8] The Exchange has committed to file a proposed rule change under section 19(b)(3)(A) of the Act to identify the options classes to be included in the second expansion.

[9] As proposed in its filing, ISE represents that options trading in penny increments will not be eligible for split pricing, as permitted under ISE Rule 716.

[10] In approving this proposed rule change, the Commission has considered the proposed rule's impact on efficiency, competition, and capital formation. *See* 15 U.S.C. 78c(f).

[11] 15 U.S.C. 78f(b)(5).

[12] PCX News Release, "Pacific Exchange to Trade Options in Pennies," June 28, 2005.

[13] Commission Press Release 2006–91, "SEC Chairman Cox Urges Options Exchanges to Start Limited Penny Quoting," June 7, 2006.

[14] *See* Securities Exchange Act Release Nos. 55161 (January 24, 2007), 72 FR 4754 (February 1, 2007) (SR-ISE–2006–62); 55162 (January 24, 2007),

*Ex. A, p. 3 of 8*

*Ex  A, p. 5 of 10*

Federal Register / Vol. 72, No. 71 / Friday, April 13, 2007 / Notices    **18703**

necessary or appropriate in the public interest, for the protection of investors or otherwise in furtherance of the purposes of the Act.

### IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

*Electronic Comments*

• Use the Commission's Internet comment form (*http://www.sec.gov/rules/sro.shtml*); or
• Send an e-mail to *rule-comments@sec.gov*. Please include File Number SR–ISE–2007–19 on the subject line.

*Paper Comments*

• Send paper comments in triplicate to Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549–1090.

All submissions should refer to File Number SR–ISE–2007–19. This file number should be included on the subject line if e-mail is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's Internet Web site (*http://www.sec.gov/rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for inspection and copying in the Commission's Public Reference Room. Copies of the filing also will be available for inspection and copying at the principal office of ISE. All comments received will be posted without change; the Commission does not edit personal identifying information from submissions. You should submit only information that you wish to make available publicly. All submissions should refer to File Number SR–ISE–2007–19 and should be submitted on or before May 4, 2007.

For the Commission, by the Division of Market Regulation, pursuant to delegated authority.[15]

**Florence E. Harmon,**
*Deputy Secretary.*
[FR Doc. E7–6961 Filed 4–12–07; 8:45 am]
**BILLING CODE 8010–01–P**

---

### SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–55604; File No. SR–NASD–2006–109]

### Self-Regulatory Organizations; National Association of Securities Dealers, Inc.; Notice of Filing of Proposed Rule Change and Amendment Nos. 1 and 2 Thereto Relating to Representation of Parties in Arbitration and Mediation

April 9, 2007.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act")[1] and Rule 19b–4 thereunder,[2] notice is hereby given that the National Association of Securities Dealers, Inc. ("NASD"), through its wholly owned subsidiary, NASD Dispute Resolution, Inc. ("NASD Dispute Resolution") filed with the Securities and Exchange Commission ("SEC" or "Commission") on September 14, 2006, and amended on November 9, 2006 (Amendment No. 1)[3] and February 23, 2007 (Amendment No. 2),[4] the proposed rule change as described in Items I, II, and III below, which Items have been prepared by NASD Dispute Resolution. The Commission is publishing this notice to solicit comments on the proposed rule change, as amended, from interested persons.

### I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

NASD Dispute Resolution is proposing to amend the Code of Arbitration Procedure for Customer Disputes ("Customer Code"), the Code of Arbitration Procedure for Industry Disputes ("Industry Code"), and the NASD Code of Arbitration Procedure

[15] 17 CFR 200.30–3(a)(12).
[1] 15 U.S.C. 78s(b)(1).
[2] 17 CFR 240.19b–4.
[3] Amendment No. 1 makes clarifying changes to the rule text emphasizing that attorneys may represent parties in NASD's forum, unless state law prohibits such representation. Amendment No. 1 also makes several clarifying and technical changes to the proposed rule filing.
[4] Amendment No. 2 makes clarifying changes to the rule text concerning restrictions on non-attorney representation. Amendment No. 2 also includes minor organizational changes to a paragraph and footnotes describing the American Bar Association Model Rule of Professional Conduct 5.5.

("Code") to address representation of parties in arbitration and mediation.[5] Below is the text of the proposed rule change. Proposed new language is in italics; proposed deletions are in brackets.

\* \* \* \* \*

### Customer Code

12208. Representation of Parties

*(a) Representation by a Party*

Parties may represent themselves in an arbitration held in a United States hearing location. A member of a partnership may represent the partnership; and a bona fide officer of a corporation, trust, or association may represent the corporation, trust, or association.

*(b) Representation by an Attorney*

At *any stage of an arbitration proceeding held in a United States hearing location, [All] all* parties *shall* have the right to be represented by [counsel during any stage of an arbitration] *an attorney at law in good standing and admitted to practice before the Supreme Court of the United States or the highest court of any state of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States, unless state law prohibits such representation.*

*(c) Representation by Others*

Parties may be represented in an arbitration by a person who is not an attorney, unless:
• *state law prohibits such representation, or*
• *the person is currently suspended or barred from the securities industry in any capacity, or*
• *the person is currently suspended from the practice of law or disbarred.*

[5] The proposed rule change contemplates changes to Rules 12208 and 13208 of the Customer and Industry Codes, which restate old Rule 10316. *See* Securities Exchange Act Release No. 55158 (Jan. 24, 2007); 72 FR 4574 (Jan. 31, 2007) (File Nos. SR–NASD–2003–158 and SR–NASD–2004–011) (Order Approving Proposed Rule Change and Amendments 1, 2, 3, and 4 to Amend NASD Arbitration Rules for Customer Disputes and Notice of Filing and Order Granting Accelerated Approval of Amendments 5, 6, and 7 Thereto; Order Approving Proposed Rule Change and Amendments 1, 2, 3, and 4 to Amend NASD Arbitration Rules for Industry Disputes and Notice of Filing and Order Granting Accelerated Approval of Amendments 5, 6, and 7 Thereto). The changes to Proposed Rule 10407 reflect changes to the new NASD Code of Mediation Procedure. *See* Securities Exchange Act Rel. No. 52705 (Oct. 31, 2005); 70 FR 67525 (Nov. 7, 2005) (SR–NASD–2004–013). The new NASD Code of Mediation Procedure is currently included in the Code, but will be removed and renumbered as a separate section now that the Customer and Industry Codes have been approved.

*(d) Qualifications of Representative*

Issues regarding the qualifications of a person to represent a party in arbitration are governed by applicable law and may be determined by an appropriate court or other regulatory agency. In the absence of a court order, the arbitration proceeding shall not be stayed or otherwise delayed pending resolution of such issues.

\*    \*    \*    \*    \*

**Industry Code**

13208. Representation of Parties

*(a) Representation by a Party*

Parties may represent themselves in an arbitration held in a United States hearing location. A member of a partnership may represent the partnership; and a bona fide officer of a corporation, trust, or association may represent the corporation, trust, or association.

*(b) Representation by an Attorney*

At any stage of an arbitration proceeding held in a United States hearing location, [All] *all* parties *shall* have the right to be represented by [counsel during any stage of an arbitration] *an attorney at law in good standing and admitted to practice before the Supreme Court of the United States or the highest court of any state of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States, unless state law prohibits such representation.*

*(c) Representation by Others*

Parties may be represented in an arbitration by a person who is not an attorney, unless:
• state law prohibits such representation, or
• the person is currently suspended or barred from the securities industry in any capacity, or
• the person is currently suspended from the practice of law or disbarred.

*(d) Qualifications of Representative*

Issues regarding the qualifications of a person to represent a party in arbitration are governed by applicable law and may be determined by an appropriate court or other regulatory agency. In the absence of a court order, the arbitration proceeding shall not be stayed or otherwise delayed pending resolution of such issues.

\*    \*    \*    \*    \*

**Code of Arbitration Procedure**

10407. *Representation of Parties*

*(a) Representation by Party*

Parties may represent themselves in mediation held in a United States hearing location. A member of a partnership may represent the partnership; and a bona fide officer of a corporation, trust, or association may represent the corporation, trust, or association.

*(b) Representation by an Attorney*

At any stage of a mediation proceeding held in a United States hearing location, all parties shall have the right to be represented by an attorney at law in good standing and admitted to practice before the Supreme Court of the United States or the highest court of any state of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States, unless state law prohibits such representation.

*(c) Representation by Others*

Parties may be represented in mediation by a person who is not an attorney, unless:
• state law prohibits such representation, or
• the person is currently suspended or barred from the securities industry in any capacity, or
• the person is currently suspended from the practice of law or disbarred.

*(d) Qualifications of Representatives*

Issues regarding the qualifications of a person to represent a party in mediation are governed by applicable law and may be determined by an appropriate court or other regulatory agency. In the absence of a court order, the mediation proceeding shall not be delayed pending resolution of such issues.

[10407] *10408.* Mediator Selection (a)–(d) No change.

[10408] *10409.* Limitation on Liability No change.

[10409] *10410.* Mediation Ground Rules (a)–(g) No change.

[10410] *10411.* Mediation Fees (a)–(c) No change.

\*    \*    \*    \*    \*

**II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change**

In its filing with the Commission, NASD included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. NASD has prepared

summaries, set forth in Sections A, B, and C below, of the most significant aspects of such statements.

*A. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

1. Purpose

Background

NASD Dispute Resolution believes a rule is needed to clarify the issue of representation of parties in dispute resolution. NASD Rule 10316 states that all parties shall have the right to representation by counsel at any stage of the proceedings. The rule provides no guidance on the kind of representatives who are permitted to practice in the NASD dispute resolution forum, or on the qualifications those representatives must have to participate in the forum. Moreover, Rule 10316 does not address a growing trend in American jurisprudence, the multi-jurisdictional practice of law.

The multi-jurisdictional practice of law occurs when attorneys, licensed in one United States (U.S.) jurisdiction, practice law in a jurisdiction in which they are not licensed. In the area of dispute resolution, for example, it is common for an attorney licensed to practice law in one state to represent a client in a dispute resolution proceeding in another state in which the attorney is not licensed. Although this practice is permitted in many jurisdictions, it may be a violation of certain other states' unauthorized practice of law provisions. Until recent years, most states had taken no action against this practice. However, two state courts have found that out-of-state attorneys must meet certain conditions in order to participate in a dispute resolution proceeding in their jurisdictions.[6] In light of these developments, the American Bar Association (ABA) amended its Model Rule of Professional Conduct 5.5 (ABA Model Rule 5.5) to promote the multi-jurisdictional practice of law.[7]

---

[6] See Birbrower, Montalbano, Condo & Frank v. Superior Court, 949 P.2d 1 (Cal. 1998); see also Florida Bar v. Rapoport, 845 So. 2d 874, 2003 Fla. LEXIS 250 (Fla. 2003).

[7] ABA Model Rule 5.5, as amended, would allow a United States lawyer, admitted in one United States jurisdiction, to engage in certain types of legal activity in another United States jurisdiction where he is not licensed to practice, without being deemed to be engaging in the unauthorized practice of law. For purposes of the dispute resolution forum, ABA Model Rule 5.5, as amended, states, in relevant part, that a lawyer may provide legal services on a temporary basis in an out-of-state jurisdiction that are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in the jurisdiction or another jurisdiction, if the services

*Ex. A, p. 5 of 8*

*Ex A, p. 7 of 10*

Federal Register / Vol. 72, No. 71 / Friday, April 13, 2007 / Notices

Accordingly, NASD proposes to codify its current practice of permitting the multi-jurisdictional practice of law in NASD's dispute resolution forum to the extent permitted under applicable state law. NASD also proposes to codify its current practice which allows non-attorney representatives to represent parties in arbitration or mediation.

*Previous Proposal Relating to Representation in Arbitration and Mediation*

On February 9, 2005, NASD filed a proposed rule change with the Commission to address attorney representation in arbitration and mediation.[8] The proposed rule change would have:

• Allowed parties to represent themselves in an arbitration or mediation;

• Allowed parties to be represented by an attorney at law admitted to practice before a U.S. jurisdiction at any stage of the proceeding; and

• Deferred to the states any issues regarding qualifications of a person to represent a party.

NASD amended this proposal on July 8, 2005 to clarify that it was intended to address the issue of multi-jurisdictional practice of law by attorneys, and was not intended to address the issue of representation by non-attorneys in arbitration or mediation proceedings.[9]

As amended, the attorney representation proposal was published in the **Federal Register** on July 21, 2005.[10] The SEC received fifteen comments, which primarily focused on two issues: Whether the rule should preempt state law regarding attorney licensing, and whether the rule should prohibit non-attorneys from practicing in NASD's forum. The comments and

NASD's response are discussed in subsection C below.

Based on the comments received on the attorney representation proposal, as amended, NASD recognized that the proposal may have been ambiguous. NASD did not intend to change current practice in the forum regarding representation of parties by non-attorneys, or to preempt state law on the issue of attorney licensing. Because the comments indicated that these positions were unclear, NASD withdrew its proposal. The current proposed rule change addresses representation of parties by themselves, by attorneys and by non-attorneys in arbitration and mediation.

*Representation of Parties by Themselves, Attorneys and Non-Attorneys in Arbitration and Mediation*

NASD is proposing to amend Rules 12208 and 13208 of the Customer and Industry Codes, respectively, and Rule 10407 of the Code to clarify that in both arbitration and mediation: (1) Parties may represent themselves; (2) parties may be represented by an attorney, provided certain criteria are met; (3) parties may be represented by a person who is not an attorney, unless state law prohibits such representation or the person is currently suspended or barred from the securities industry in any capacity or is an attorney who is currently suspended from the practice of law or disbarred; and (4) issues regarding qualifications of a representative are governed by applicable law.

First, the proposed rule change codifies current practice by explicitly stating that parties may represent themselves in arbitration.

Second, the proposed rule change codifies current practice permitting the multi-jurisdictional practice of law by attorneys in the NASD dispute resolution forum to the extent permitted by state law. In addition, the proposed rule change states that if a party chooses to be represented by an attorney, the attorney must be licensed to practice in a U.S. jurisdiction and be in good standing in that jurisdiction.[11] NASD believes that requiring an attorney to be licensed in a U.S. jurisdiction and to be in good standing in that jurisdiction will protect investors by prohibiting

individuals who have been suspended from the practice of law or disbarred from representing parties in the NASD forum. Further, the requirement that an attorney must be licensed to practice in a U.S. jurisdiction sets a standard of practice for the arbitration forum that is consistent with the other rules and proceedings of NASD. In particular, Rule 9141(b) of the NASD Code of Procedure states, in relevant part, that a person may be represented in any disciplinary proceeding by an attorney at law admitted to practice before the highest court of any state of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States.[12] The proposed rule change also is consistent with Rule 102(b) of the SEC Rules of Practice, which states that, "[i]n any proceeding, a person may be represented by an attorney at law admitted to practice before the Supreme Court of the United States or the highest court of any State * * *."[13]

Third, the proposed rule change addresses the representation of parties by non-attorneys in the NASD forum. Under the proposed rule change, parties may be represented in an arbitration or mediation by a person who is not an attorney, unless state law prohibits such representation or the person is currently suspended or barred from the securities industry in any capacity or is an attorney who is currently suspended from the practice of law or disbarred.

This provision would be applicable to all arbitration claims. NASD understands, however, that it may be difficult for investors with claims of less than $100,000 to retain an attorney on a contingency-fee basis because the attorney may believe that the attorney's share of the award might be too small to justify the effort. In these circumstances, NASD believes that investors should be able to seek other assistance to resolve their arbitration or mediation claims for a more affordable fee.[14] At the same time, NASD believes

---

arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission. This rule is sometimes referred to as the temporary practice rule. Twenty-seven states have either adopted ABA Model Rule 5.5 or a similar version of the rule or currently have a temporary practice rule in effect. American Bar Association, Charts on State Adoption of MJP Proposals (visited Aug. 23, 2006) *http://www.abanet.org/cpr/mjp/state_adoption.html.* Other states have adopted a temporary practice rule that, like ABA Model Rule 5.5, allows an attorney not licensed in a state to provide certain types of legal services in the state on a limited basis. The laws of Michigan and Virginia specifically authorize occasional or incidental practice by out-of-state lawyers. *See* Mich. Comp. Law Ann. sec. 600.916 and Va. State Bar Rule, Pt. 6, sec. 1(C).

[8] *See* Rule No. SR–NASD–2005–023.

[9] *Id.* at Amendment No. 1.

[10] *See* Securities Exchange Act Rel. No. 34–52045 (July 15, 2005); 70 FR 42123 (July 21, 2005) (File No. SR–NASD–2005–023).

[11] The requirement to be licensed to practice in a U.S. jurisdiction and be in good standing in that jurisdiction is in addition to and not in lieu of the requirement that an attorney must comply with applicable laws of the relevant jurisdiction. As previously noted, while the multi-jurisdictional practice of law may be permitted in many jurisdictions, it may constitute a violation of certain states' unauthorized practice of law provisions.

[12] This rule has been enforced in NASD Enforcement proceedings. In two similar cases, a respondent's answer was stricken from the record because the respondent's representative had not indicated that he was a licensed attorney. *See* NASDR Office of the Hearing Officers, OHO Order 97–15 (C01970032) (visited Aug. 24, 2006), available at: *http://www.nasd.com/web/groups/enforcement/documents/oho_disciplinary_orders/nasdw_007839.pdf; see also* OHO Order 98–10 (C10970176) (visited Aug. 24, 2006), available at: *http://www.nasd.com/web/groups/enforcement/documents/oho_disciplinary_orders/nasdw_007695.pdf.*

[13] *See* SEC Rules of Practice, 17 CFR § 201.102(b) (2004).

[14] Consistent with current practice, the proposed rule would allow a relative, friend or associate to
Continued

that such non-attorney representatives should not be persons who have been found by a regulatory body in essence to be unfit to represent clients or to conduct securities business with the public. Thus, to protect investors, the rule would prohibit non-attorney representatives who are currently suspended or barred from the securities industry, or attorneys who are currently suspended from the practice of law or disbarred, from representing parties in the NASD dispute resolution forum. While NASD remains concerned about some aspects of non-attorney representation, NASD does not wish to prohibit investors from retaining a non-attorney representative if that person is the only affordable representation available, and the requirements of the proposed rule are met.

Last, the proposed rule change would allow an attorney to represent a client in an NASD arbitration or mediation held in any U.S. hearing location, regardless of the jurisdiction in which the attorney is licensed. An attorney's ability to represent clients in a jurisdiction in which he or she is not licensed, however, would be subject to the applicable law of that jurisdiction. The proposed rule change is not intended to preempt state law; it is intended to reflect current practice in the forum which, based on experience, indicates that the outcome of a dispute resolution proceeding depends more on the level of knowledge, training and skill of the attorneys, rather than the jurisdiction from which the attorneys received their license to practice.

2. Statutory Basis

NASD believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the Act,[15] which requires, among other things, that NASD's rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest. NASD believes that the proposed rule change balances the needs of investors to have access to representation, particularly in small

cases, with NASD's responsibility to protect investors, the integrity of its forum, and the public interest.

*B. Self-Regulatory Organization's Statement on Burden on Competition*

NASD does not believe that the proposed rule change will result in any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act, as amended.

*C. Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received From Members, Participants, or Others*

Written comments were neither solicited nor received by NASD. The SEC received fifteen comments on the attorney representation proposal that it published for comment on July 21, 2005.[16] Commenters primarily focused on two issues: Whether the rule should preempt state law regarding attorney licensing, and whether the rule should prohibit non-attorneys from practicing in NASD's forum.

With respect to the state preemption issue, several commenters agreed that state law should control whether attorneys may participate in arbitrations in a state in which they are not licensed.[17] These commenters stated that representatives should be licensed legal practitioners who are regulated and have demonstrated a minimum level of competence required to represent clients. Several other commenters opposed the provision of the proposal that would allow state law to control attorney-licensure issues,

stating that the provision could result in delays in arbitration proceedings as representatives make the qualifications of an out-of-state representative the focus of the proceedings.[18]

Other commenters addressed whether the proposal would prohibit, in effect, non-attorneys from practicing in NASD's forum. Several commenters contended that the proposal should address non-attorney representation and should allow non-attorneys to practice in the forum.[19] These commenters argued that the proposal attempted to deny investors access to qualified non-attorney representatives who have securities industry experience and are willing to accept cases that are too small to enable investors to retain a securities attorney. Other commenters contended that the proposal should prohibit compensated non-attorney representation in securities arbitration, stating that the lack of legal training makes non-attorneys less knowledgeable or competent to deal fully with the laws and issues that arise in an arbitration proceeding.[20]

As noted above, based on the disparate comments received on the proposal, NASD recognized that the proposal may not have been clear. NASD did not intend to change current practice in the forum regarding representation of parties by non-attorneys; nor did it intend to preempt state law on the issue of attorney licensing. Because the comments indicated that these positions were unclear, NASD has withdrawn the attorney representation proposal and is filing this new proposal to replace it.

**III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action**

Within 35 days of the date of publication of this notice in the **Federal Register** or within such longer period (i) as the Commission may designate up to 90 days of such date if it finds such longer period to be appropriate and publishes its reasons for so finding or (ii) as to which the self-regulatory organization consents, the Commission will:

A. By order approve such proposed rule change, or

B. Institute proceedings to determine whether the proposed rule change should be disapproved.

---

represent or assist a person (*e.g.*, an elderly or disabled person) with his or her arbitration or mediation. In addition, law school securities arbitration clinics can provide investors with affordable legal representation. NASD notes that a securities arbitration clinic also can help an investor who has a smaller claim but is unable to hire an attorney, provided the investor qualifies for assistance. *See* How to Find an Attorney (for more information on clinic locations and eligibility requirements) (visited Sept. 13, 2006), available at: <http://www.nasd.com/ArbitrationMediation/StartanArbitrationMediation/HowtoFindanAttorney/index.htm>.

[15] 15 U.S.C. 78o–3(b)(6).

[16] Comments were submitted by Timothy A. Canning, Esq., Law Offices of Timothy A. Canning, dated February 11, 2005 ("Canning I Letter"); Albert A. Rapoport, Esq., dated June 20, 2005 ("Rapoport Letter"); Joseph C. Korsak, Esq., Law Office of Joseph C. Korsak, dated July 22, 2005 ("Korsak Letter"); Michael Firestein, Esq. and Navid Yadegar, Esq., Proskauer Rose LLP, dated August 1, 2005 ("Firestein Letter"); Rodney J. Heggy, Esq., Heggy & Associates, LLC, dated August 4, 2005 ("Heggy Letter"); Richard L. Sacks, Securities Arbitration Consultant, dated August 9, 2005 ("Sacks Letter"); Rosemary Shockman, President, Public Investors Arbitration Bar Association, dated August 9, 2005 ("PIABA Letter"); Joseph O'Donnell, dated August 10, 2005 ("O'Donnell Letter"); Irwin G. Stein, dated August 10, 2005 ("Stein Letter"); Montgomery G. Griffin, Esq., Securities Arbitration Offices of Montgomery G. Griffin, dated August 10, 2005 ("Griffin Letter"); Timothy A. Canning, Esq., Law Offices of Timothy A. Canning, dated August 10, 2005 ("Canning II Letter"); Kevin P. Takacs, CCO, Dominion Investor Services, Inc., dated August 11, 2005 ("Takacs Letter"); Jill I. Gross, Director of Advocacy and Barbara Black, Director of Research, Pace Investor Rights Project, dated August 11, 2005 ("Pace Letter"); and Stephen C. Krosschell, Esq., Goodman & Nekvasil, P.A., dated August 11, 2005 ("Krosschell Letter"). The letter received from Marie W. Hayes, dated March 25, 2005, does not comment on the proposed rule change.

[17] *See* Firestein Letter, Heggy Letter, Pace Letter, PIABA Letter and Rapoport Letter.

[18] *See* Canning I & II Letters, Korsak Letter, Krosschell Letter, Sacks Letter and Stein Letter.

[19] *See*, Griffin Letter, O'Donnell Letter, Rapoport Letter, Sacks Letter, Stein Letter and Takacs Letter.

[20] *See* Firestein Letter, Heggy Letter, Korsak Letter, Pace Letter and PIABA Letter.

***Ex. A, p. 7 of 8***

***Ex A, p. 9 of 10***

Case 3:10-cv-01330-SI   Document 10   Filed 04/13/10   Page 16 of 25

Federal Register / Vol. 72, No. 71 / Friday, April 13, 2007 / Notices **18707**

## IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change, as amended, is consistent with the Act. Comments may be submitted by any of the following methods:

*Electronic Comments*

• Use the Commission's Internet comment form (*http://www.sec.gov/rules/sro.shtml*); or

• Send an e-mail to *rule-comments@sec.gov.* Please include File Number SR–NASD–2006–109 on the subject line.

*Paper Comments*

• Send paper comments in triplicate to Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE., Washington, DC 20549–1090.

All submissions should refer to File Number SR–NASD–2006–109. This file number should be included on the subject line if e-mail is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's Internet Web site (*http://www.sec.gov/rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for inspection and copying in the Commission's Public Reference Room. Copies of such filing will also be available for inspection and copying at the principal office of NASD. All comments received will be posted without change; the Commission does not edit personal identifying information from submissions. You should submit only information that you wish to make available publicly. All submissions should refer to the File Number SR–NASD–2006–109 and should be submitted on or before May 4, 2007.

[21] 17 CFR 200.30–3(a)(12).

For the Commission, by the Division of Market Regulation, pursuant to delegated authority.[21]

**Florence E. Harmon,**
*Deputy Secretary.*
[FR Doc. E7–7008 Filed 4–12–07; 8:45 am]
**BILLING CODE 8010–01–P**

## SECURITIES AND EXCHANGE COMMISSION

**[Release No. 34–55590; File No. SR–NYSE–2007–29]**

**Self-Regulatory Organizations; New York Stock Exchange LLC; Notice of Filing and Immediate Effectiveness of Proposed Rule Change and Amendment No. 1 Thereto Relating to Rules 13 ("Definitions of Orders") and 17 ("Use of Exchange Facilities")**

April 5, 2007.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act")[1] and Rule 19b–4 thereunder,[2] notice is hereby given that on March 16, 2007, the New York Stock Exchange LLC ("NYSE" or "Exchange") filed with the Securities and Exchange Commission ("Commission") the proposed rule change as described in Items I and II below, which Items have been substantially prepared by the Exchange. On April 5, 2007, NYSE filed Amendment No. 1 to the proposed rule change. The Exchange has filed the proposal as a "non-controversial" rule change pursuant to Section 19(b)(3)(A) of the Act[3] and Rule 19b–4(f)(6) thereunder,[4] which renders it effective upon filing with the Commission. The Commission is publishing this notice to solicit comments on the proposed rule change, as amended, from interested persons.

## I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

The Exchange is proposing to amend Exchange Rules 13 ("Definitions of Orders") and 17 ("Use of Exchange Facilities") in order to establish a mechanism to route orders to away market centers when that market center is displaying the national best bid and offer in accordance with Exchange Rules and Regulation NMS under the Act[5] ("Reg. NMS"). The Exchange further proposes to have its order router facilitate the acceptance of executions that result in an odd-lot or a sub-penny

[1] 15 U.S.C. 78s(b)(1).
[2] 17 CFR 240.19b–4.
[3] 15 U.S.C. 78s(b)(3)(A).
[4] 17 CFR 240.19b–4(f)(6).
[5] 17 CFR 242.600 *et seq.*

execution. The text of the proposed rule change is available at NYSE, the Commission's Public Reference Room, and *www.nyse.com.*

## II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

In its filing with the Commission, NYSE included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. NYSE has prepared summaries, set forth in Sections, A, B, and C below, of the most significant aspects of such statements.

*A. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

1. Purpose

The Exchange is proposing to amend Exchange Rules 13 and 17 to establish a mechanism to route orders to away market centers ("Routing Broker") when that market center is displaying the national best bid and offer in accordance with Exchange Rules and Reg. NMS. Through this filing the Exchange further proposes to have its Routing Broker facilitate the acceptance of executions that result in an odd-lot[6] or a sub-penny[7] execution after the Routing Broker routed an Exchange order to an away market center.

The Exchange intends to use its broker-dealer affiliate,[8] Archipelago Securities LLC ("ArcaSec"), as its

[6] Odd-lot orders are orders for a size less than the standard unit (round lot) of trading, which is 100 shares for most stocks, although some stocks trade in 10 share units.
[7] The Exchange notes that trading centers that provide sub-penny executions are currently developing order types that allow market participants to request a non-sub-penny execution. The Exchange states that the Routing Broker will perform this function only until such time as needed for the creation of these new order types and the completion of any systems modifications associated with the handling of the new order types.
[8] On February 27, 2006, the Commission approved the Exchange's business combination with Archipelago Holdings, Inc. ("Merger"). *See* Securities Exchange Act Release No. 53382 (February 27, 2006), 71 FR 11251 (March 6, 2006) (SR–NYSE–2005–77). Pursuant to the Merger, NYSE Group, Inc. became the overall parent company of the Exchange and Archipelago Holdings, Inc. NYSE Group, Inc. operates two securities exchanges: The Exchange and NYSE Arca, Inc. (formerly known as the Archipelago Exchange, or ArcaEx®, and the Pacific Exchange). ArcaSec remains a wholly owned subsidiary of Archipelago Holdings, Inc. and is therefore an affiliate of the Exchange.

*Ex. A, p. 8 of 8*

*Ex A, p. 10 of 10*

FILED

MAR 0 2 2010

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: T. Fraguero, Deputy

1  TIMOTHY A. CANNING  CSB No. 148336
Law Offices of Timothy A. Canning
2  1125 16th St., Suite 204
PO Box 4201
3  Arcata, CA 95518

4  Telephone:  (707) 822-1620
Facsimile: (707) 760-3523
5
6  Attorney for Plaintiff RICHARD SACKS

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR  MARIN COUNTY

10

11  RICHARD SACKS, individually and doing
business as INVESTORS RECOVERY
12  SERVICE,                              |    Case No. CIV 10 01085
                        Plaintiff,       |
13                                        |    COMPLAINT FOR DAMAGES
    vs                                    |
14                                        |
    DEAN DIETRICH, TERI COSTER BOESCH |
15  and DOES 1 through 50, inclusive       |
                                          |         BY FAX
16                                        |
                        Defendants.       |
17  _____/

18

19          Plaintiff alleges:

20                      **FIRST CAUSE OF ACTION**
                    (Intentional Interference With Contract)
21                        (Against All Defendants)

22          1)  At all times relevant to the events alleged herein, plaintiff RICHARD

23  SACKS was domiciled in California, and was doing business as Investors Recovery

24  Service.  Mr. Sacks and his business has been  located in Marin County, California, since

25  1991.

26          2)  Defendant DEAN DIETRICH is a natural person whom plaintiff is

27  informed and believes and thereon alleges resides in  Marin County, California.

28          3)  Defendant  TERI COSTER BOESCH  is a natural person whom

                                    1

SACKS v. DIETRICH ET AL.                      COMPLAINT FOR DAMAGES

*Ex B, p. 1 of 9*

1  Plaintiff is informed and believes and thereon alleges resides in San Mateo County,

2  California.

3         4)  FINRA  Dispute Resolution Inc., is a wholly owned subsidiary of the

4  Financial Industry Regulatory Authority, Inc.  ("FINRA")(formerly known as "NASD").

5  FINRA is a self-regulatory organization registered with the Securities and Exchange

6  Commission as a national securities association pursuant to the Maloney Act of 1938 (15

7  U.S.C. §§ 78o-3 et seq.).  FINRA's Dispute Resolution's rules and procedures are subject

8  to regular federal review, and its arbitration rules must be reviewed and approved by the

9  Securities and Exchange Commission ("SEC").

10         5)  Plaintiff is ignorant of the true names and capacities of defendants sued

11  herein as DOES 1 through 50, inclusive, and therefore sue these defendants by such

12  fictitious names.  Plaintiff will amend this complaint to allege their true names and

13  capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that

14  each of the fictitiously named defendants is responsible as hereinafter shown for the

15  occurrences and injuries alleged in this complaint.

16         6)   Plaintiff is informed and believes and thereon alleges that each

17  defendant named herein was, at all times herein mentioned, acting as the agent of each

18  and every other defendant named herein, and in doing the things herein alleged was

19  acting within the course and scope of such agency and with the permission and consent

20  of each and every defendant.

21         7)  As a result of the events and occurrences herein alleged, plaintiff has

22  been damaged in an amount in excess of the limited jurisdiction of this Court, and

23  therefore brings this action under this Court's unlimited jurisdiction.

24         8)   On or about August 8, 2008, Vincent Dang  entered into a written

25  contract with Plaintiff to represent him in a securities arbitration proceeding to be

26  administered by FINRA Dispute Resolution Inc., against FINRA member firm Merrill

27  Lynch ("Merrill Lynch") and individuals associated with that firm  (collectively referred

28  to herein as "arbitration respondents").

2

9)   The contract between Mr. Dang and plaintiff required plaintiff to represent Mr. Dang in the arbitration, including but not limited to appearing in the arbitration proceeding in a representative capacity, participating in examining witnesses, presenting facts, and presenting documentary evidence at the arbitration hearing, as well as at any pre-hearing conferences held by the arbitrators.   In exchange for the services described hereinabove, Mr. Dang agreed to pay plaintiff an amount equal to thirty-two percent of any arbitration award or settlement.

10)   Pursuant to the agreement described in paragraph 9 hereinabove, Plaintiff, on behalf of Mr. Dang, submitted a statement of claim to FINRA Dispute Resolution.  As required, Mr. Dang executed a written Uniform Submission Agreement to FINRA, formally submitting the dispute that was the subject of the statement of claim to FINRA for arbitration.  Mr. Dang did not submit to arbitration any question related to who could represent him at the arbitration hearing.  The Uniform Submission Agreement executed by Mr. Dang and also by the arbitration respondents provides, in relevant part:

> The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization. . . . . The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

11)  Mr. Dang did not raise the issue of representation in his Statement of Claim or Uniform Submission Agreement.  No arbitration respondent raised the issue of representation in their answer or Uniform Submission Agreement.  No counterclaim was asserted by the arbitration respondents.

12)  FINRA Code of Arbitration Procedure Rules 12200 and 12201 limits the arbitrators' authority to only those matters that arise *"in connection with the business activities of the member or the associated person, ..."*

13)FINRA has previously stated, repeatedly, that its arbitration forum is not the proper forum for addressing the issue of whether individuals not licensed to practice law can represent parties in arbitration.   FINRA rules specifically permit individuals who are not attorneys to represent parties before its arbitration forums.

14)  Plaintiff never submitted to the jurisdiction of  FINRA to decide whether plaintiff could represent Mr. Dang  in the FINRA arbitration.

15)   FINRA Dispute Resolution appointed defendant DIETRICH, defendant BOESCH, and Susan Alexander as arbitrators to hear and decide Mr. Dang's claim against the arbitration respondents.   Defendants DIETRICH and BOESCH and Susan Alexander are collectively referred to herein as "the panel".

16)  Arbitration respondents requested that the panel bar plaintiff from representing Mr. Dang, on the grounds that plaintiff had been barred from the securities industry.   In response, plaintiff objected to the panel even considering this issue, on the grounds that the panel did not have the authority to decide whether plaintiff could represent Mr. Dang, and on the grounds that plaintiff had not contracted with this panel to make any such decision.

17)  The arbitration respondents relied on FINRA Rule  13208, which provides:

> **(a) Representation by a Party**
> Parties may represent themselves in an arbitration held in a United States hearing location. A member of a partnership may represent the partnership; and a bona fide officer of a corporation, trust, or association may represent the corporation, trust, or association.
> **(b) Representation by an Attorney**
> At any stage of an arbitration proceeding held in a United States hearing location, all parties shall have the right to be represented by an attorney at law in good standing and admitted to practice before the Supreme Court of the United States or the highest court of any state of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States, unless state law prohibits such representation.
> **(c) Representation by Others**
> Parties may be represented in an arbitration by a person who is not an attorney, unless:
>> • state law prohibits such representation, or

4

1

> - the person is currently suspended or barred from the securities industry in any capacity, or

2

> - the person is currently suspended from the practice of law or disbarred.

3

> **(d) Qualifications of Representative**

4

> Issues regarding the qualifications of a person to represent a party in arbitration are governed by applicable law and may be determined by an appropriate court or other regulatory agency. In the absence of a court order, the arbitration proceeding shall not be stayed or otherwise delayed pending resolution of such issues.

5

6

7        18) Subject to that objection as to the panel's jurisdiction and authority, as

8    set forth in paragraph 16 hereinabove, Mr. Dang also presented to the panel reasons why

9    plaintiff could represent him in arbitration without a license to practice law, which

10   include but are not limited to the following:

11       (a) FINRA (and its predecessor, the NASD) has repeatedly declined to

12   prevent individuals who are not licensed to practice law from representing parties in their

13   forum in California;

14       (b) Code of Civil Procedure section 1281.4(i)(3) permits non-attorney

15   representation in non-judicial arbitrations to the same extent as permitted prior to the

16   decision in *Birbrower v. Superior Court* (1998) 17 Cal.4[th] 117;

17       (c) prior to *Birbrower*, parties in securities arbitrations had the right to be

18   represented by persons who were not attorneys (*Report of the Securities Industry*

19   *Conference on Arbitration*, 22 Fordham Urb. L. J. 507, 514;  see also, Robbins,

20   *Securities Arbitration Procedure Manual*, §6-2, p. 247 (3rd ed. 1998) and Estrange &

21   Nevitt, *The Participation of Unlicensed Advocates in California in the Resolution of*

22   *Disputes Between Investors and Stockbrokers* 31 Cal. Western L. R. 73, 74, 98 (1994)

23   (acknowledging that non-attorney representatives were representing investors in

24   arbitrations in California, and proposing that the U.S. Congress enact legislation to

25   regulate non-attorney advocates in securities arbitration)), regardless of whether those

26   individuals were barred from the securities industry or not;

27       (d) the Contra Costa County Superior Court, in <u>Financial Network</u>

28   <u>Investment Corporation  v. Richard Sacks, et al.</u>, Case No. 97-00983, found that plaintiff

---

5

Sacks v. Dietrich  et al.                                    Complaint for Damages

**Ex B, p. 5 of 9**

1  herein was not engaged in the unlawful practice of law by representing parties in NASD

2  arbitrations; and

3           (e) FINRA specifically told the SEC that its rule 13208 (regarding who can

4  represent parties in arbitration at its forum)  does not preempt state law.  FINRA told the

5  SEC:

6           The regulation of attorneys and others who represent individuals and
           corporations in arbitration proceedings has traditionally been governed by
7           state law, not a uniform federal rule.  FINRA has determined that there is
           no overriding need for a uniform rule in this area, and that continued
8           compliance with state rules is in the best interests of all participants in its
9           arbitration forum.

10  (Letter from FINRA to the SEC, dated 9/17/2007)

11           19) In conjunction with the objection described hereinabove, defendants

12  were informed in writing that a contract, as described in paragraphs 10 and 11

13  hereinabove, existed between plaintiff and Mr. Dang.

14           20) On February 3, 2010, defendants issued an order which provided, in

15  relevant part:

16
17           The issue before the panel is whether Richard Sacks is disqualified as a
           representative for the Claimant under Rule 13208. Under this rule, a person
18           currently barred or suspended from the securities industry may not represent a
           party in arbitration.
19
20           It is undisputed that Mr. Sacks was barred or suspended from the securities
           industry. However, he contends, *inter alia* that neither FINRA nor this panel has
21           the authority under Rule 13208 to decide this matter. Rule 13413 states otherwise:
           "The panel has the authority to interpret and determine the applicability of all
22           provisions under the Code." Under the circumstances, the panel has no alternative
           but to disqualify Mr. Sacks from serving as the Claimant's representative and it is
23           so ordered.

24           However, if, and only if, the evidentiary hearing scheduled for February 9, 2010
25           proceed as scheduled, the panel would allow Mr. Sacks to assist a representative
           qualified under Rule 13208 in such proceedings, provided that under no
26           circumstances would Mr. Sacks be allowed to address, elicit testimony or in any
           manner question the panel, the parties or any witnesses at such proceedings.
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, the panel requests that Claimant advise FINRA no later than February 3, 2010 whether the hearing will proceed as scheduled or be postponed.

(Arbitrator Susan Alexander dissented from that decision, and hence is not named as a defendant in this action.)

21) By prohibiting plaintiff from representing Mr. Dang, defendants wrongfully exceeded their authority under the arbitration submission agreement, FINRA rules and California law, in that (a) plaintiff never agreed to permit these arbitrators to have jurisdiction over his representation of parties;  (b) the FINRA rule itself does not give arbitrators such authority, but instead expressly leaves that decision to the courts and other regulatory agencies; (c) FINRA has stated that issues of representation are to be determined by state law; and (d) the defendants caused the arbitration proceeding to be delayed.

22) By exceeding their authority and engaging in the conduct alleged in paragraph 21 hereinabove, Defendants intentionally and wrongfully prevented plaintiff from performing his contract with Mr. Dang.

23) The contract between plaintiff and  Mr. Dang, as described in paragraphs 8 and 9 hereinabove, would have otherwise been performed but for defendants' interference as alleged in paragraphs 20  to 21, hereinabove.

24)  Defendants' wrongful conduct, as alleged in paragraphs 20 to 21 hereinabove, had no connection to the issues which the parties to the arbitration agreed that Defendants could decide.

25)  As a proximate result of defendants' conduct as alleged in paragraphs 20  to 21 hereinabove, plaintiff has suffered damages in an amount not yet ascertained but which exceeds this Court's jurisdiction for limited cases.

26) The aforementioned conduct of defendants was intentional, designed to deprive plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct in that it subjected plaintiff to cruel and unjust hardships in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive

7

damages against defendants.

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as hereinafter alleged.

## SECOND CAUSE OF ACTION
(Negligent Interference with Contract)
(Against All Defendants)

27) Plaintiff sets forth by reference as though fully set forth below each and every allegation of Paragraphs 1 through 25  hereinabove.

28) Defendants intentionally performed the wrongful acts as alleged in paragraphs 20 to 21 hereinabove, with substantial certainty that said acts would result in interference with plaintiff's contract with Mr. Dang.

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as hereinafter alleged.

## THIRD CAUSE OF ACTION
(Intentional Interference with Prospective Economic Advantage)
(Against All Defendants)

29)Plaintiff set forth by reference as though fully set forth below each and every allegation of Paragraphs 1 through 26 hereinabove.

30) Plaintiff is in the business of representing investors and consumers in securities arbitration, for a fee, since 1991.  Prior to engaging in the wrongful conduct alleged in paragraphs 20 to 21 hereinabove, defendants knew that plaintiff was engaged in such a business.

31) By engaging in the wrongful conduct alleged in paragraphs 20 to 21 hereinabove, defendants have erected barriers to plaintiff conducting his business, in that the panel's order will be distributed to other securities industry members and their representatives thereby making it more burdensome and less likely that plaintiff will be retained to represent parties in other securities arbitrations.

1     WHEREFORE, Plaintiff prays judgment against defendants, and each of

2  them, as hereinafter alleged.

3

4                    **FOURTH CAUSE OF ACTION**
                (Negligent Interference with Prospective Economic Advantage)
5                        (Against All Defendants)

6     32) Plaintiff sets forth by reference as though fully set forth below each and

7  every allegation of Paragraphs 1 through 25 and 30 through 31 hereinabove.

8     33) Defendants intentionally performed the wrongful acts as alleged in

9  paragraph 31 hereinabove, with substantial certainty that said acts would result in

10  interference with plaintiff's contract with Mr. Dang.

11     **WHEREFORE,** plaintiff prays judgment against defendants, and each of

12  them, as follows:

13     1.  For all causes of action, compensatory damages in an amount not yet

14  ascertained, according to proof;

15     2.  For all causes of action, interest on the compensatory damages at the

16  legal rate of ten percent per annum from February 3, 2010;

17     3.  For the first cause of action, punitive damages;

18     4.  For plaintiff's costs incurred herein; and

19     5.  For such other and further relief as the court may deem proper.

20

21                          LAW OFFICES OF TIMOTHY A. CANNING

22

23  Dated:  March 2, 2010          By:  _Timothy A. Canning_

24                                     Timothy A. Canning
                                       Attorney for Plaintiff Richard Sacks
25

26

27

28

9